Report oe the Committee ON Privileges AND ElectioNS, ON the case oe J. H. DaytoN oe SdeeolK.
Mr. Niven, from the committee on privileges and elections, to whom was referred the communication of John H. Dayton, a member elect, from Suffolk county, in reference to his ineligibility to a seat in this House, reports that the said John IT. Dayton was elected a member of the Assembly for Suffolk county, at the last annual election, as *151 appears from the return of tlie county canvassers filed in the office of tlie Secretary of State.
Tbat on the twenty-seventh of November last, as he asserts, he-received and accepted the appointment of collector of the customs for the district of Sag Harbor, an office conferred by the federal government.
The Constitution of this State, article 1st, section 11th, provides, that “ if any person shall, while a member of the Legislature, be appointed to any office, civil or military, under the government of the United States, his acceptance thereof, shall vacate his seat in the Legislature.”
The only question, therefore, that arises, is, whether Mr. Dayton is to be considered a member of the Legislature, previous to the time fixed by law for its meeting, and without having taken the constitutional oath. On this point, your committee have no hesitation or doubt. He had been duly elected ; the fact of his election liad been legally communicated by the county canvassers to the- Secretary of State. And we infer that he was, at the time of his acceptance of the office of collector of customs, defacto, a member of this House; and that by his acceptance of said office, he disqualified himself.
Your committee, therefore, recommend that -his name be stricken from the roll of the House.
CoMMÜNICATION.
Sag Habbok, January 6, 1845.
Sir. — The Constitution of our State declares that any member of the Legislature, by accepting an appointment, civic, diplomatic, etc., from the general government, thereby vacates his seat; or rather, this is the gist of the section. Now, sir, anxious that the good people of Suffolk county should be fully represented, and the situation of my family being such as, by their indisposition, to forbid my personal appearance at Albany, to present my case before the House, for its decision, I am induced to ask the favor of you, that, if that decision should be to deny my right to a seat in your honorable body, the earliest possible opportunity may be afforded them, if they wish to supply the vacancy.
On the twenty-seventh of November, 1844,1 received and accepted the appointment of collector of the customs, for the district of Sag Harbor. Since that time, I have consulted several legal gentlemen, with a view to ascertain whether the prohibition, extended to my *152 case or not, having received the appointment previous-to the time oí the opening of the session. Their opinions have not given me much light. Had I consulted only my own feelings, I should have resigned; but being unwilling to involve the county in the expense incident to a special election, finally determined to bring the question personally before the House. The circumstance before mentioned preventing this, and deeming the House the proper and constitutional judge of the matter, must form my apology for asking through you their decision.
Respectfully yours.
JOHN H. DAYTON.
To the Speaker of the Assembly.
On motion of Mr. Lee,
Ordered, That the said report be committed to committee of the whole House.
Assembly Journal, 1845, pages 87 and 88.
Committee of the 'Whole.
In Assembly, January 14th, 1845.
The House then resolved itself into a committee of the whole, on the report of the committee on privileges and elections, on the communication of John IT. Dayton, relative to his right to a seat in this House as member of Assembly for Suffolk county; and, after some time spent therein, Mr. Speaker resumed the chair, and Mr. I. Lee, from the said committee, reported progress, and asked for and obtained leave to sit again.
Assembly Journal, 1845, page 91..
In Assembly, January 15, 1845.
Report of committee referred to committee on the judiciary.
Mr. Bailey moved to refer the report of the committee on privileges and elections, relative to the seat of- John H. Dayton, to the committee on the judiciary.
Mr. Speaker put the question whether the House would agree to the said motion, and it was determined in the affirmative.
Assembly Journal, 1845, page 98.
*153 Majoeity Report oe Judiciary Committee that Seat is Not vacated.
In Assembly, Januanj 20, 1845.
Mr. T. R. Lee, from the committee on the judiciary, reported as follows:
In Assembly, Jamiary 20, 1845.
Report oe the Majority oe the Judioiary Committee, on the case oe John H. Dayton.
Mr. T. R. Lee, from the majority of the committee on the judiciary, to whom were referred the report of the committee on privileges and elections, upon the communication of John H. Dayton, in reference to his right to a seat as a member of Assembly from the county of Suffolk, reports that they have considered the matter referred to them, and present the following as the result of their investigation :
The question is whether the acceptance by Mr. Dayton, of the office of collector of customs at Sag Harbor, between the time of his election in November last and the beginning of the political year, disqualified him for a seat in this body. It arises under the 11th section of the first article of the Constitution of the State, to which, the House is now, for the first time, to give a construction, not legislative, but judicial, upon a case which has already occurred affecting the rights as well of the county of Suffolk, as of their representative, Mr. Dayton.
The section alluded to is in these words: “ No person being a member of Congress or holding any judicial or military office under the Huited States, shall hold a seat in the Legislature. And if any person shall, while a member of the Legislature, be elected to Congress, or appointed to any office, civil or military, under the government of the United States,.his' acceptance thereof shall vacate his seat.” It -would be difficult to find terms more direct and perspicuous. The only point seems to be, was Mr. Dayton á “ Member of the Legislature ; ” bad he a “seat” there when he accepted office under the federal government ? "What, then, constitutes a member of the Legislature 1 When may he be said to have a seat ?
According to the various provisions of this first article of the Constitution, members of the Legislature, as well as the Governor and Lieutenant-Governor, are to be elected in November or October, and “ enter on the duties of their respective offices ” on the first day of the'political year ; that is, on the first day of January next following their election. And members of Assembly held their seats for the *154 term of one year. Tbns the House elected in November, 1843, held from the first of January, 1844, till the first of January, 1845; that chosen at the last November election, holds from the first of January, 1845, to the first of January, 1846. Each successive House occupying one full year.
It follows then that prior to the first of January instant, no person elected to the present Assembly, was a “ member of the Legislature,” nor could Mr. Dayton u vacate his seat” to which he was not then entitled; else we must adopt the solecism, a public officer without an office, or admit this absurdity, that there'were two co-existing Assemblies at one and the same time. Such appears to be the necessary result, from the language of the Constitution, according to its com mon acceptation.
Where the terms of a law are free from ambiguity, it is an acknow ledged rule of interpretation that the meaning of the lawgiver must be sought for in the law itself. This principle applies with peculiar force to constitutional provisions, drawn as we may fairly presume them to be, with great care and deliberation. We are, therefore, in the opinion of your committee, not at liberty to warp the plain import of the provision in question, in order to meet any supposed object of its framers, beyond what appears upon the face of the instrument.
There does not, however, appear in the view of your committee, to be any conflict between the construction they have adopted and the context with which the passage stands allied, or the history of that part of the Constitution.
On the contrary, it is shown by the strongest implication from the first clause of the eleventh section, that the convention did not mean to exclude United States’ officers, other than those holding judiciary or military stations, from spats in the Legislature; and the cognate provision prohibiting members of the Legislature from receiving appointments from the State government, covers just the same term which is insisted upon by your committee — that is the term during which such members should be entitled to sit, only varying the phraseology in order to prevent an evasion of the restraint, by a resignation before the end of the period for which they were elected.
If we look to the proceedings of the convention that framed the Constitution, we find that a provision was reported by, a committee of that body, exactly meeting the views of those who would exclude officers under the federal government from a seat in this body — the *155 rejection of which is regarded by your committee as a strong confirmation of their interpretation. Your committee respectfully offer the following resolution:
Resolved, That the seat of John H. Dayton is not vacated by his acceptance of the office of collecter of customs at Sag Harbor. Assembly Documents, 1845, Yol. 1, No. 19.
MINORITY REPORT OE JuDIOIAEV COMMITTEE THAT SEAT IS VACATED.
Mr. Wheeler, from the minority of the committee on the judiciary, reports as'follows :
IN Assembly, January 20th, 1845.
Report oe tiie MiNoeity oe the Committee on the Judiciary, on the Case oe John H. Dayton.
The undersigned, a minority of the committee on the judiciary, to whom was referred the report of the standing committee on privileges an,d elections, in the case of John H. Dayton, of Suffolk county, and the communication of said Dayton to the honorable the Speaker of this House, begs leave respectfully to report, jhat he has given the subject all- the attention in his power, and entertains views on the subject differing from those of the majority of the committee, and that he deems it his duty to briefly state to the House his opinions, the question being a new one, and in the opinion of the undersigned a very important one.
There is not, and cannot be, any difference of opinion in relation to the facts in the case, for there is but one statement, and that is admitted to be true.
The difficulty arises from the application of the Constitution and laws to those facts. This is always more or less difficult, and good and honest men not unfrequently differ in the application of legal principles, and therefore the undersigned feels that he is not transcending the powers delegated to him, or subjecting himself to the charge of improper motives in dissenting from the opinion of a majority of the committee of which he has the honor to belong.
A brief recapitulation of the facts will make the application of the law more apparent; and they are substantially as follows, namely: John H. Dayton, a member of the Assembly, from Suffolk county, after his election to this House, and before the first Tuesday of January, 1845, was appointed to, and accepted the office of collector of the customs for the district of Sag Harbor, by the Hnited States’ government.
*156 In the formation of our general and State governments, our fathers marked out a new path in the history of nations; and the manner in which it was done, finally ratified' or subsequently modified, was by propositions forming together a Constitution for the nation. The .several States in a similar manner, by appropriate and. not inconsistent propositions, formed the Constitutions for each separate, independent and sovereign State, each and all freed from any reasoning, void of all precedents, and each are alike independent on itself, the history of its own formation, and the good common sense of the people, for interpretation, where 'doubts of their meaning arise.
The rules of interpretation apply with equal force to the national and State Constitutions ; and gifted men of this country have already given such rules to the nation, I might say, to the civilized world, which not only make doubtful passages pi ear in our - own charts of liberty, but shed such a lustre upon the rights of man, as to produce an homage to American learning and genius.
Mr. Justice Story, in his learned and able work on the Constitution of. the United States, remarks, “ that in constructing the Constitution of the United States, we are, in the first instance, to consider what are its nature and objects, its scope and design, as apparent from the structure of the instrument viewed as a whole, and also viewed in its component parts.
“ Where the words are unambiguous, but the provision may cover more or less ground according to the intention, which is yet subject to conjecture ; or where it may include in its general terms more or less than might seem dictated by the general design, as’that may be gathered from other parts of the instrument, there is much more room for controversy; and the argument from inconvenience will probably have different influences upon different minds. * * Whenever it is a question of power, it should be approached with infinite caution, and affirmed only upon the most persuasive reasons.
“ Contemporary construction is properly resorted to, to illustrate and confirm the text, to explain a doubtful phrase, or to expound an obscure clause. It is to be constructed as á frame or fundamental law of government, established by the People of the United States, according to their own free pleasure and sovereign will. In this respect,” says the same author, “ it is in no wise distinguishable from the Constitutions of the State governments. Each of them is established by the people for their own purposes, and each is founded on their supreme authority.
*157 - “The powers which are confirmed, the restrictions which are imposed, the authorities which are exercised, the organization and distribution thereof, which are provided, are in each case for the same object, the common benefit of the governed, and not for the profit or dignity of the rulers.
“ The rule,” says the same author, “ of interpretation must be taken, which best follows out the apparent intention. This is the mode universally adopted in construing the State Oonstitictions. It has its origin in common sense.
“No construction of a given power is to be allowed, which plainly defeats or impairs its avowed objects.”
Chief Justice Marshall is-no less wise than the great man I have so largely quoted from, for he says as men whose intentions require no concealment, generally employ the words which most directly and aptly express the ideas they intend to convey, the enlightened patriots who framed our Constitution, and the people who adopted it, must be understood to have employed words in their natural sense, and to have intended what they have said. If, from the imperfection of human language, there should be serious doubts respecting the extent of any given powers, it is a well settled rule that the objects for which it was given, especially when those objects are expressed in the instrument itself, should have great influence in the construction. With these safe rules and following the earnest language-of Mr. Jefferson, let the case of Mr. Dayton be tried. “ I have always,” says Mr. Jefferson, “ thought that where the line of demarcation between the powers of the general and State governments was doubtfully or indistinctly drawn, it would be prudent and praiseworthy, in both parties, never to approach it but under the most urgent necessity.
The object evidently designed by the framers of our Constitution was the preservation of our State Legislature from the direct or indirect influence of the national government, and the question which now presents itself is, does the eleventh section of article first, of our Constitution attain it by a construction which Story and Marshall authorize %
The section declares, that no person being a member of Congress, or holding any judicial .or military office under the United States, shall hold.a seat in the Legislature; and if any person shall, while a member of the Legislature, be elected to Congress, or appointed to any office, civil or military under the government of the United States, his acceptance thereof shall vacate his seat.
*158 The first questions which present themselves, are, is John H. Dayton of Suffolk county, a member of the House, and if so, when did he become a member ?
The certificate of the clerk of the county of Suffolk, directed to the Secretary of State, upon its face .entitled him to a seat in this House, on the first Tuesday of January, 1845, after his taking the oath prescribed bylaw.
The time when he became a member of the Assembly must be gathered from the statute and not from general reasoning, because the membership is merely a thing of the statute.
General elections, says the statute, shall be held on the first Monday of November in every year.
Senators, and members of Assembly, are chosen by the people. Every member of the Legislature shall be privileged from arrest., etc.
Each member shall enjoy the Wee privilege, for the space of fourteen days previous to any such session, etc., etc.
The Legislature shall assemble at the Capitol in the city of Albany, on the first Tuesday of January, in every year. Each member of the-Senate and Assembly shall be entitled, etc., for every twenty miles of the distance from the place of his residence, to the place of the meeting of his House. If any member of the Senate or Assembly shall, after his arrival at the place of meeting of either House, or on his way thereto, be prevented by indisposition from attending either of the said Houses, he shall be entitled to the like compensation, etc.
Similar language is used in the Constitution — “Members of the Legislature, and all officers, &c. &c., shall, beeoee they enter upon the duties of their respective offices, take and subscribe the following oath or affirmation.”
It will strike the mind of even the most inexperienced in legal subtleties, that the language above quoted regards the election to this body, as constituting membership, but that the duties incident to the office cannot be assumed or performed until a particular time, and upon certain contingencies, that of taking and subscribing a particular oath or affirmation.
The language member eleet or member of Assembly after the first Tuesday of January, is not in the Constitution or laws, and the term member of Assembly was used in the statutes prior to 1821, in the same manner as it is now used in the statutes and Constitution.
This language, and the manner of its use is perfectly simple and plain, and relieves the Constitution from an apparent want of clear *159 ness, and consequently, if this view of the Constitution and statutes is correct,.the question ceases to be a doubtful one, even under the view taken of it by the majority of the committee. Besides, it casts no reflection upon the good and great men who constituted the convention for forming our Constitution, while the other view implies that they unguardedly or unskillfully performed their duty, either of which cannot be indulged for a moment.
Indeed the history of that convention shows that this very section was the occasion of much debate, and the amendments proposed to it as originally oifered, and the one now existing adopted by a large vote with an evident understanding of its meaning.
The view taken upon this subject by the undersigned is sustained by the practice in the House of Commons in England, for persons elected to the House of Commons become at one time members for certain purposes, and at another time for other purposes, the former instantly upon their being returned elected, and may be ehosen members of committees before they appear and qualify/ and it is familiar to every one, that persons elected to our national Congress are entitled to certain privileges before its sitting. In neither case, however, do such members become acting members until after they qualify, and yet for certain purposes they are as truly members before qualifying as after.
This reasoning, however, may fail, and be regarded as emphatically special, and if it is, then the broad question arises, what did the men who framed our Constitution moan by the disability in the eleventh section of article first. The intent, the design, is what we want; if that intent or design is clearly stated, or even shadowed forth according to the opinions of constitutional law entertained and promulgated ■by Marshall and Story. The evil to be guarded against is the interference of the general government with the State sovereignty, and if, in the language of Mr. Jefferson^ the line of demarcation is doubtfully or indistinctly drawn between the general and State governments, it would be prudent and praiseworthy in both parties never to approach it, bxut imder the m,ost urgent necessity.
Does this necessity now exist? Are the rights of Suflblk county in jeopardy ? She has one able representative in this body, and upon this House declaring the seat of Mr. Dayton vacant, sho 'may elect another member of Assembly; and besides, the whole House is bound to protect the rights of all the inhabitants of the State, and it will not he wanting in good faith to “ chivalrous Suffolk.”
*160 Ho one can read this section and doubt that the convention intended to guard the State against national interference. Any other conclusion would he worse than fc¿ly ; and that intent has been admitted in debate in this House, by those giving to the section a different and only a limited construction, but it is said that intent is ohly to apply after the member shall have taken his seat.. An illustration will show the unsoundness, if not the absurdity, of such an opinion better than argument.
A member of the Assembly (taking the language of the statute), from Hew York, is appointed collector of the port of Hew York on the last day of December, accepts his appointment, and takes his Seat in this House on the first Tuesday of January. ' A member of the Assembly from Erie county is elected at the same time, in the same manner, takes his seat on the first Tuesday of January also, and is appointed collector of the port of Buffalo on the eighth of January, and accepts the appointment. On the tenth of January, the member from Hew York rises in his place and asks the House, by resolution, or otherwise, to declaré the seat of the member from Erie county vaeant-, on the ground that he has accepted the office of collector iphile a member of this House. The House must sustain the resolution and declare the seat-vacant, and yet, according to the view of the subject taken by the majority of the committee, the House cannot 'declare the seat of the collector of Hew York vacant; and yet the object of the framers of the Constitution was to prevent the national government from interfering, through national offices, with our State legislation. Can this be the result of the wisdom of the convention of this State, solemnly convened to form a Constitution in 1821? If this is so, every member of any future Legislature of this State, after his election, may be appointed to any civil or military office under the government of the United States, and hold them all. With such a construction what is the sovereignty of this great State? What is its independence, when nothing but a great moral personal consideration prevents the United States from making every member of our State Legislature a civil officer or military commander.
The absurdity and danger of such a construction strikes awe into .every man’s mind. It cannot do otherwise.
If more need be said, let the members of that convention speak, and tell us if possible what ¿/¿eyjmeant.
■ Says Col. Young, then of Saratoga : “ It would be well enough to say that the acceptance of an office under the general government *161 should vacate the seat of a member elected before he received such appointment, bat if the people chose afterwards, to confer their votes on a person holding such office, he could not conceive why they should not have the privilege of doing so.”
Mr. King of Queens says: “ We aré members of both governments. The question before the convention is, whether, as these governments are independent in themselves, as far as relates to the appointments to office, and as we are now called upon to make a general law for this State alone, it will not he wise in us to preserve that distinction,' which the independent nature of our government naturally sxoggests ! Is it not important, in order, to preserve the independence of the two, that their offices be kept distinct? The gentlemen of this convention, when they take into consideration the manifest importance of sustaining our independence in our own government, as well as in that of the federal union, will not doubt the correctness of this position. Many of the offices under the general government are of an important nature; and a man intrusted with the discharge of such important offices, ought not to burthen himself with the discharge of such important duties under the State government. In attempting to serve the two, one or the other will be neglected. The period has arrived in which some such rule ought to be laid down on this subject.
Mr. Bacon, of Oneida says: “ Could any man be blind to ' the enormous increase of patronage and influence which, in the course of events, and in the short period of thirty years, the national government had acquired to itself, to an amount which would once have startled even its warmest admirers.' By means of its military, its naval and its civil departments, it had spread itself over the whole surface of the country. Against whatever State party it was thrown in, that party must kick the beam. In looking over the several State Constitutions,” says Mr. Bacon, “it will be found that at least thirteen out of twenty-four States have this provision in its full extent. Can it be, then, uncourteous for New York to assert the same principle?”
Mr. Sutherland of Schoharie, who introduced an amendment of the section as reported by the committee, and which'made the section as it now is, says, the amendment which I have offered guards against what I consider the only danger to which we can be exposed, by permitting the officers of the general government to hold seats in onr Legislature. The amendment on your table, therefore, provides that any member of the Legislature who accepts any office from the *162 United States, shall forfeit his seat. Here we have explicitly the intent of the framers of the instrument itself.
Still that word while is in the way it may be said. In the views already submitted that is of no consequence, but admit that it has a talismanic power to destroy andmot preserve, according to the reasoning adopted by a strict construction, yet its malign power is destroyed by another consideration.
The moment the member takes his seat, that moment, so far as the Constitution is concerned, he is appointed to the office, accepts it, and his seat is thereby made vacaut, because the Constitution only reaches the case where it comes within the bounds where offenses may come. A member of Assembly appointed, to a United States office before he takes his seat, may perform its duties, receive its emoluments, and resign his seat in the Legislature before it commences, and then the constitutional disability dees not reach him ; it attaches only at the point where mischief can be’done. It does not prevent men from taking office under the general government, but if offices are accepted it deprives them of State offices, and the wisdom of the law is as clear and apparent as the rays of the sun upon the dew drop.
In the opinion, therefore, of the undersigned, the seat of John LI. Dayton, of Suffolk county, is vacant, and he begs leave to offer the following resolution :
Resolved-, That the seat in this House of John H. Dayton, “ a member of Assembly ” from Suffolk county, is vacant in consequence of his accepting the office of the collector of the customs for the district of Sag Harbor.
All of which is respectfully submitted.
D. E. WHEELER.
Assembly Documents, 1845, Yol. 1, Ho. 20.
Mr. Morrison moved to lay the said reports and resolutions on the table.
Mr. Speaker put the question whether the House would agree to the said motion of Mr. Morrison, and it was determined in the negative.
Committed to Committee of the Whole.
Mr. Worden moved that the said reports and resolutions be committed to a committee of the whole, and made the special order for to-morrow at twelve o’clock.
*163 Mr. Speaker put tlie question whether the House would agree to the said motion of Mr. Worden, and it was determined in the affirmative.
Assembly Journal, 1845, pages 120, 121.
Seat is hot Vacated by Acceptance of Fedekal Office.
In Assembly, January 23ii, 1845.
The House again resolved itself into a committee of the whole, on the reports and resolutions of the majority and minority of the conn mittee on the judiciary, relative to the right of John H. Dayton to a seat in this House, as a member of Assembly from the county of Suffolk; and after some time spent therein, Mr. Speaker resumed the chair, and Mr. Bailey, from the said committee, reported • that the committee had had the said reports and resolutions under consideration, and had adopted the resolution reported by the majority of the committee on the judiciary, which said .resolution is in the words following, to wit:
Resolved, That the-seat of John IT. Dayton is not vacated by his acceptance of the office of Collector of Customs, at Sag Harbor, and that the chairman had directed their chairman to report the same to the House.
Eepoet Adopted. — Seat not Vacated.
Mr. Speaker put the question, whether the House would agree with the committee of the whole in their said report, and it was determined in the affirmative.
Ayes — 67. Hays — 54.
Assembly Journal, 1845, pages 139, 140; see also pages 129 and 139.
John H. Dayton takes the Oati-i of Office.
In Assembly, January 24Ik, 1845.
Mr. John H. Dayton, a member of the Assembly from the county of Suffolk, appeared in the Assembly Chamber.
Mr. Speaker administered to Mr. Dayton the oath of office prescribed by the Constitution; thereupon,
Ordered, That Mr. Dayton do take his seat.
Assembly Journal, 1845, page 141.